IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FEDERAL DEPOSIT INSURANCE CORPORATION, etc., | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) No. 09 C 4458 ) |
| CHARLES T. MUDD, et al., | ) ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

This mortgage foreclosure action was initiated by Federal Deposit Insurance Corporation ("FDIC") as Receiver for First Bank of Beverly Hills. To that end FDIC properly invoked federal jurisdiction under 28 U.S.C. §1345, which grants the district courts "original jurisdiction of all civil actions, suits or proceedings commenced by the United States, or by any agency or officer thereof expressly authorized to sue by Act of Congress"--a statute that is expressly brought into play by the provision of 12 U.S.C. §1819(b)(1) that confirms FDIC "shall be an agency of the United States for purposes of section 1345 of Title 28" and by the corollary statute that confers "federal court jurisdiction" over any FDIC-initiated lawsuit, 12 U.S.C. §1819(b)(2)(A)("Section 1819(b)(2)(A)"):[1]

---

[1] Those combined statutes enabled FDIC to follow the conventional practice in Illinois mortgage foreclosure cases of including "Unknown Owners and Non-Record Claimants" as defendants, a practice that would have defeated any effort to invoke federal subject matter jurisdiction in diversity terms--see this Court's opinion in John Hancock Mut. Life Ins.

> Except as provided in subparagraph (D), all suits of a
> civil nature at common law or in equity to which the
> Corporation [FDIC], in any capacity, is a party shall
> be deemed to arise under the laws of the United States.

Now, in an unsurprising development, FDIC'S interest has been acquired by First Chicago Bank & Trust ("First Chicago," originally named as a codefendant in the Complaint), which has noticed up for presentment on April 13[2] a motion for its substitution as the proper party plaintiff in place of FDIC pursuant to Fed. R. Civ. P. 25(c). Although the motion is silent as to subject matter jurisdiction, that change in status has reawakened this Court's concern as to the obligation succinctly stated nearly a quarter century ago in <u>Wis. Knife Works v. Nat'l Metalcrafters</u>, 781 F.2d 1280, 1282 (7th Cir. 1986):

> The first thing a federal judge should do when a
> complaint is filed is check to see that federal
> jurisdiction is properly alleged.

Indeed, that judicial responsibility was even more firmly

---

<u>Co. v. Cent. Nat'l Bank in Chicago</u>, 555 F.Supp. 1026 (N.D. Ill. 1983).

[2] Although April 13 is the presentment date specified in the Judge's Copy of the notice of motion delivered to this Court's chambers on April 7, First Chicago's counsel appeared in court on the April 12 motion call (and this Court's minute clerk later discovered that the notice of motion delivered to the Clerk's Office [Dkt. 49, filed April 6], specified that the motion would be presented on April 12). Just what accounts for counsel's erratic treatment of the matter is unknown to this Court, but it observes that an April 6 mailing of the notice to defendant Charles Mudd (as referred to in the certificate of service) would not comply with this District Court's LR as to service by mail regarding an April 12 presentment.

underscored five years ago in <u>Wernsing v. Thompson</u>, 423 F.3d 732, 743 (7th Cir. 2005)(internal citations and quotation marks omitted):

> Jurisdiction is the power to declare law, and without it the federal courts cannot proceed. Accordingly, not only may the federal courts police subject matter jurisdiction sua sponte, they must.

That mandate has triggered some research into the question whether subject matter jurisdiction, grounded as it was in FDIC's presence in this lawsuit as an agency of the United States, continues to exist once that underpinning has been removed. Although the research has uncovered no Seventh Circuit case dealing with the subject, two other Courts of Appeals have given an affirmative answer to that question (the Fifth Circuit in <u>Adair v. Lease Partners, Inc.</u>, 587 F.3d 238, 242-45 (5th Cir. 2009)[3] and the Second Circuit in <u>FDIC v. Four Star Holding Co.</u>, 178 F.3d 97, 100-01 (2d Cir. 1999)), while the Third Circuit has rejected that result and has come to the opposite conclusion in <u>New Rock Asset Partners, L.P. v. Preferred Entity Advancements, Inc.</u>, 101 F.3d 1492, 1498-1503 (3d Cir. 1996).[4]

---

[3] <u>Adair</u> adhered to that same court's decision in <u>FSLIC v. Griffin</u>, 935 F.2d 691, 697 (5th Cir. 1991), Congress having enacted provisions as to FSLIC that parallel the FDIC-related statutes cited and quoted here.

[4] Like the Fifth Circuit's <u>Griffin</u> case, which was the only one that had been decided before <u>New Rock</u>, the latter dealt with a United States agency other than FDIC--in that instance the RTC. But as with FSLIC (the agency involved in <u>Griffin</u>), the statutory provisions governing RTC actions precisely parallel the FDIC

It is of course conventional wisdom that the existence or nonexistence of federal subject matter jurisdiction is determined as of the date of filing (or in a removal situation, as of the date of removal to the District Court). And it has often been said, almost always in diversity cases, that post-filing or post-removal changes in the parties' circumstances do not destroy that once-established jurisdiction. If the rule were otherwise, that would create too great an opportunity for game playing (for example, a plaintiff whose state court action had been removed to the federal court on a diversity basis could force a remand by the simple expedient of assigning the claim to an assignee that shared the defendant's state of citizenship).

So it is that Griffin and later Four Star focused on policy considerations, rather than honing in on the statutory language as New Rock sought to do (more on that subject a bit later). And although Adair most recently discussed the New Rock treatment of the subject in greater detail, it ultimately adhered to Griffin pursuant to another fundamental policy--as the court said (587 F.3d at 244):

---

provisions cited and quoted earlier. All were a part of the 1989 enactment of the statute commonly referred to, in the alphabet soup parlance often employed with federal statutes and agencies, as FIRREA (more formally the Financial Institutions Reform, Recovery, and Enforcement Act of 1989). Hence the analysis in this opinion can comfortably explore the matter as evaluated by all of the different Courts of Appeals, without concern as to the different agencies involved.

As Griffin is Fifth Circuit precedent, we are bound by its holding.

As stated earlier, only the thoughtful opinion by Judge Jane Roth in New Rock began by focusing, as courts are supposed to do in such situations, with an effort at statutory interpretation. As New Rock, 101 F.3d at 1498 (numerous citations and internal quotation marks omitted, brackets in original) put it:

> This process begins with the plain language of the statute. Where...the statute's language is plain, the sole function of the court is to enforce it according to its terms. Plain meaning is conclusive, except in the rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters.

In this instance, as stated earlier, the particularly relevant statute is Section 1819(b)(2)(A), which vests federal court jurisdiction in "all suits of a civil nature at common law or in equity to which the Corporation [FDIC], in any capacity, is a party" (emphasis added). And of course FDIC's assignment to First Chicago in this case has caused that no longer to be true in literal terms--as the current Motion states:

> 3. First Chicago, as assignee, holds all of FDIC's interests in this action. Therefore, FDIC is no longer the proper party plaintiff in this action; rather, First Chicago is now the proper party plaintiff.
>
> 4. Accordingly, First Chicago should be substituted as the plaintiff in place of FDIC in this action.
>
> WHEREFORE, First Chicago respectfully requests that this Court enter of [sic] an order:

5

> A. Substituting First Chicago as the plaintiff in this action in place of FDIC;
>
> B. Dismissing FDIC as a party to this action; and
>
> C. Granting such other and further relief as the Court deems equitable and just.

That plain meaning approach served as the launching pad for the New Rock analysis (which dealt with an identical statutory use of the word "is" as to the RTC). And that plain statutory language, buttressed by an analysis of the legislative history and the background and purpose of FIRREA (see 101 F.3d at 1501), led to the Third Circuit's adoption of the conclusion that the statute "provides for jurisdiction only over cases where the RTC is a party but not where it was a party" (id. at 1499, emphasis in original).

This Court finds that approach--and hence that result--more persuasive from an analytical perspective and from an orderly approach to statutory construction than the opposite conclusion, grounded entirely as it is on policy considerations, however legitimate the latter may be--and are. If this Court were sitting in an appellate role and were thus in a position to assist in creating precedent, it would therefore cast its vote in those terms.[5]

---

[5] As sheer chance would have it, this Court has once before had the opportunity (though in a different statutory context) to rule on whether "is" really means "is." Sitting by invitation with the Court of Appeals for the Ninth Circuit, it wrote the

That, however, is not this Court's role. It must decide the issue in light of our Court of Appeals' approach to post-filing or post-removal changes, and that caselaw has come down quite hard on the side of rejecting subsequent changes as calling for the rejection of continuing subject matter jurisdiction (see, e.g., <u>In re Shell Oil Co.</u>, 966 F.2d 1130, 1133 (7th Cir. 1992) and--exemplary of later cases to the same effect--<u>Gardynski-Leschuck v. Ford Motor Co.</u>, 142 F.3d 955, 958 (7th Cir. 1998)). Accordingly this Court has concluded that the current motion for substitution will be granted and that jurisdiction over the case will be retained notwithstanding the absence of FDIC, with the exposition here being made available for future consideration if the case were to come before a precedent-making court.

_____
Milton I. Shadur
Senior United States District Judge

Date: April 12, 2010

---

opinion in <u>Guidiville Band of Pomo Indians v. NGV Gaming, Ltd.</u>, 531 F.3d 767 (9th Cir. 2008). Certiorari was sought and denied in that case, 129 S.Ct. 1038 (2009).